EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Dannelly González Meléndez<br><br>Recurrida<br><br>v.<br><br>Municipio Autónomo de San Juan, a través de su Alcalde, Miguel A. Romero Lugo; Óptima Seguros; Estado Libre Asociado de Puerto Rico; Departamento de Transportación y Obras Públicas, a través de su Secretaria, Ing. Eileen M. Vélez Vega; Compañía Aseguradora A; Compañía Aseguradora B; Contratista A; John Doe; Compañía Privada AA<br><br>Peticionarios | Certiorari<br><br>2023 TSPR 95<br><br>212 DPR ___ |

Número del Caso:  CC-2022-0703

Fecha:  24 de julio de 2023

Tribunal de Apelaciones:

Panel V

Abogado de la parte peticionaria:

Lcdo. Luis R. Mena Ramos
Lcdo. Jatniel Padilla Norat

Abogada de la parte recurrida:

Lcda. Keila M. Ortega Casals

Materia:  Daños y Perjuicios – Si los municipios responden por las reclamaciones de daños y perjuicios instadas en su contra por accidentes ocurridos en las carreteras o aceras pertenecientes al Gobierno estatal, pero que transcurren dentro de los límites territoriales de la demarcación geográfica municipal.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Dannelly González Meléndez<br><br>    Recurrida<br><br>v.<br><br>Municipio Autónomo de San Juan, a través de su Alcalde, Miguel A. Romero Lugo; Óptima Seguros; Estado Libre Asociado de Puerto Rico; Departamento de Transportación y Obras Públicas, a través de su Secretaria, Ing. Eileen M. Vélez Vega; Compañía Aseguradora A; Compañía Aseguradora B; Contratista A; John Doe; Compañía Privada AA<br><br>    Peticionarios | CC-2022-703 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 24 de julio de 2023.

El presente caso nos brinda la oportunidad de determinar si los municipios responden por las reclamaciones de daños y perjuicios instadas en su contra por accidentes ocurridos en las carreteras o aceras pertenecientes al Gobierno estatal, pero que transcurren dentro de los límites territoriales de la demarcación geográfica municipal. Para poder contestar esta interrogante debemos precisar si los ayuntamientos poseen inmunidad frente a las referidas

acciones civiles, a tenor con el inciso (g)[1] del Art. 15.005 de la Ley Núm. 81-1991, según enmendada, conocida como *Ley de Municipios Autónomos de Puerto Rico* (Ley de Municipios Autónomos), 21 LPRA ant. sec. 4705 (derogada) y, de su contraparte, la Ley Núm. 107-2020, según enmendada, conocida como *Código Municipal de Puerto Rico* (Código Municipal), 21 LPRA sec. 7001 *et seq.*

En particular, nos corresponde resolver si el Tribunal de Apelaciones erró al no expedir un recurso de *certiorari* presentado por el Municipio Autónomo de San Juan (Municipio o peticionario), mediante el cual solicitó la revisión de una *Sentencia parcial* emitida por el Tribunal de Primera Instancia en la que se declaró sin lugar una moción de sentencia sumaria parcial presentada por el peticionario.

Por los fundamentos que discutiremos, adelantamos que revocamos a los tribunales inferiores y, en consecuencia, ordenamos la desestimación de la demanda incoada en contra del Municipio. Veamos, pues, el cuadro fáctico que origina la controversia presentada.

**I**

El 4 de junio de 2021, la Sra. Dannelly González Meléndez (señora González Meléndez o recurrida), presentó una *Demanda* de daños y perjuicios en contra del Municipio, el Gobierno de Puerto Rico y el Departamento de Transportación y Obras

---

[1] El inciso (g) del Art. 15.005 de la Ley Núm. 81-1991, según enmendada, conocida como *Ley de Municipios Autónomos de Puerto Rico* (Ley de Municipios Autónomos), 21 LPRA ant sec. 4705, fue añadido al referido estatuto por virtud de la Ley Núm. 143-2019.

Públicas (DTOP) (en conjunto, el Gobierno) y otros. En esencia, la recurrida adujo que el 6 de junio de 2020 sufrió una caída mientras corría por la acera de la Avenida Luis Muñoz Rivera a la altura del Parque Luis Muñoz Rivera en San Juan. La señora González Meléndez alegó que tropezó con unos tubos de metal que se encontraban en la referida acera, los cuales estaban cubiertos con grama y sobresalían del suelo. Sostuvo que, por razón de este accidente, sufrió laceraciones en la rodilla, brazos, hombro izquierdo y mano derecha, por lo que solicitó una indemnización de $75,000 por concepto de daños, angustias y sufrimientos mentales.[2]

El 23 de febrero de 2022, el Municipio presentó ante el tribunal de instancia una *Moción de sentencia sumaria parcial*. En su escrito, arguyó que la acera donde ocurrió el accidente de la señora González Meléndez era estatal, por lo que, según el Art. 15.005 de la Ley de Municipios

---

[2] El 13 de agosto de 2021, el Gobierno presentó una *Moción de Desestimación*, al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5). En síntesis, alegó que la recurrida **no cumplió** con el requisito de notificación dispuesto en el Art. 2-A de la Ley Núm. 104 del 29 de junio de 1955, conocida como *Ley de reclamaciones y demandas contra el Estado* (Ley de demandas contra el Estado), 32 LPRA sec. 3077a. Nótese que dicho estatuto requiere que toda persona interesada en entablar una reclamación por daños en contra del Gobierno de Puerto Rico notifique por escrito al Secretario de Justicia, dentro del término de noventa (90) días siguientes a la fecha en que advino en conocimiento de los daños sufridos.

El Municipio, por su parte, presentó una *Contestación a demanda* el 16 de agosto de 2021. Básicamente, negó las alegaciones de la reclamación en su contra y sostuvo que, aunque recibió una carta de la señora González Meléndez, la misma no cumplía con el requisito de notificación dispuesto en el Art. 15.003 de la Ley de Municipios Autónomos, *supra*, 21 LPRA ant. sec. 4703.

Luego de varios trámites procesales, el 13 de septiembre de 2021, el foro primario denegó la moción de desestimación presentada. A raíz de ello, el 17 de septiembre de 2021, el Gobierno presentó ante el tribunal de instancia una solicitud de reconsideración, la cual fue denegada. Así las cosas, el 20 de octubre de 2021, el Gobierno presentó un recurso de *certiorari* ante el tribunal apelativo intermedio. En su escrito, señaló que el foro primario erró al no desestimar la demanda incoada debido a que la señora González Meléndez falló en notificar, dentro del término dispuesto en ley, su intención de presentar una reclamación por daños y perjuicios en su contra.

Autónomos, *supra*, 21 LPRA ant. sec. 4705, no se le podía reclamar por los alegados daños y perjuicios sufridos por la recurrida. Para sustentar su posición, incluyó una *Certificación* de un inspector de ordenamiento urbano de la Oficina de Tránsito y Transportación del Departamento de Operaciones y Ornato de dicha dependencia, en la cual certificó: (1) que luego de una búsqueda en el archivo físico y digital de la oficina, no se encontró evidencia de que la Avenida Luis Muñoz Rivera (PR-25R), así como sus aceras, pertenecieran al Municipio; (2) que la Avenida Luis Muñoz Rivera y sus aceras son servidumbre de paso del DTOP, y (3) que los tubos que provocaron el accidente eran parte de la rotulación o señales de tránsito controladas por dicha agencia gubernamental.[3]

Por su parte, el 11 de marzo de 2022, el Gobierno se opuso a la moción de sentencia sumaria parcial presentada por el Municipio. En síntesis, adujo que existían hechos materiales en controversia, pues, **aunque la acera donde ocurrió el accidente era estatal**, el cuidado y mantenimiento de ésta le correspondía al Municipio. Asimismo, expuso que existía controversia en cuanto a quién le pertenecía el tubo de metal que provocó el accidente. En apoyo a su escrito en oposición, el Gobierno acompañó una declaración jurada de la directora ejecutiva de la Directoría de Obras Públicas del DTOP, en la cual declaró que dicha agencia no tenía

---

[3]  *Moción de sentencia sumaria parcial*, Apéndice del *certiorari*, pág. 53.

jurisdicción, control o mantenimiento del área donde ocurrió el accidente.

Por su parte, el 16 de marzo de 2022, la señora González Meléndez compareció ante el foro de instancia para oponerse a la solicitud de sentencia sumaria parcial presentada por el Municipio. Así las cosas, adujo que existían controversias de hechos materiales sobre: (1) el ente con jurisdicción y control de la acera donde ocurrió el accidente, y (2) la procedencia de los tubos de metal que sobresalían de dicha vía. La parte recurrida razonó que tanto el Gobierno como el Municipio habían sido negligentes, pues ninguno aceptaba ser responsable de los tubos de metal o de ostentar jurisdicción sobre la acera en cuestión.

El 24 de marzo de 2022, el Municipio presentó un escrito titulado *Suplemento en apoyo de moción de sentencia sumaria parcial*. Acompañó su escrito con copia del Proyecto del Senado 1022, los informes positivos de las comisiones que evaluaron el mismo en cada cuerpo legislativo y una carta presentada por la Federación de Alcaldes de Puerto Rico, en la que endosaban la enmienda del Art. 15.005 de la Ley de Municipios Autónomos, *supra*, para añadir el inciso (g).

Por otra parte, el 4 de abril de 2022, el tribunal apelativo intermedio emitió una *Sentencia* en torno al recurso de *certiorari* presentado por el Gobierno. Así las cosas, luego de evaluar la posición de las partes, revocó la denegatoria del foro de instancia en la que declaró no ha lugar a la solicitud de desestimación presentada por el

Gobierno. El Tribunal de Apelaciones determinó que la señora González Meléndez omitió satisfacer el requisito legal de notificación sobre su intención de presentar una demanda dentro del término de noventa (90) días desde que conoció el daño cuyo resarcimiento procuraba.

Devuelto el caso al Tribunal de Primera Instancia, el 13 de junio de 2022, dicho foro emitió una *Sentencia parcial* en la que,[4] en resumen, (1) desestimó la reclamación en contra del Gobierno, y (2) denegó la moción de sentencia sumaria parcial presentada por el Municipio, tras concluir que no se cumplió con la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.

El foro *a quo* determinó que la certificación presentada por el Municipio para sustentar la moción de sentencia sumaria parcial no era admisible en evidencia debido a que de su contenido surgían hechos y conclusiones sobre aspectos no relacionados con la falta de responsabilidad de la acera en controversia. El foro primario razonó que el Municipio debió presentar una declaración jurada basada en hechos específicos o, en la alternativa, una certificación que cumpliera con las Reglas de Evidencia de Puerto Rico.

---

[4] En su *Sentencia parcial* el Tribunal de Primera Instancia consignó que los siguientes hechos estaban en controversia, a saber:

    (1) Si para el 4 de junio de 2020, el Municipio [de San Juan] cumplió con su deber de mantener la acera donde ocurrió el accidente en condiciones de razonable seguridad.

    (2) Si [Dannelly] González Meléndez sufrió daños, angustias y sufrimientos mentales como consecuencia del accidente y la valorización de estos.

    (3) Si [Dannelly] González Meléndez incurrió en negligencia comparada.

En su dictamen, el Tribunal de Primera Instancia, aludiendo a lo resuelto en Pérez v. Mun. de Lares, 155 DPR 697, 709 (2001), señaló que, según la Ley Núm. 49 de 1 de diciembre de 1917, según enmendada, sobre conservación de carreteras estaduales que discurren por zonas urbanas (Ley Núm. 49 de 1917), 9 LPRA secs. 12-18, los tramos de las carreteras se consideran estatales para efectos de su conservación, mientras que las zonas urbanizadas y/o la construcción de aceras paralelas a dichas carreteras están bajo el control y la jurisdicción de los municipios. El tribunal de instancia entendió que, **a pesar de que la Avenida Luis Muñoz Rivera es estatal**, el DTOP no es responsable del cuidado y mantenimiento de la acera donde la señora González Meléndez sufrió el accidente. Esto, debido a que "la presunta servidumbre de paso existente a favor del DTOP, no concluye que éste sea el dueño exclusivo de la acera en controversia o a quien corresponda su cuidado o mantenimiento".[5]

En desacuerdo con el dictamen del tribunal de instancia, el 27 de junio de 2022, el Municipio presentó una *Moción de reconsideración*, la cual fue declarada no ha lugar el 6 de julio de 2022. Aún inconforme, el 3 de agosto de 2022, el peticionario compareció ante el Tribunal de Apelaciones mediante un recurso de *certiorari*. En síntesis, alegó que el foro primario falló en resolver que la certificación que

---

[5] *Sentencia parcial*, Apéndice del *certiorari*, págs. 1-16.

éstos acompañaron con la moción de sentencia sumaria parcial no era admisible en evidencia, y en no aplicar la inmunidad concedida a los municipios en virtud del inciso (g) del Art. 15.005 de la Ley de Municipios Autónomos, *supra*, cuando ocurren accidentes en carreteras y aceras estatales.

El 16 de septiembre de 2022, el foro apelativo intermedio emitió una *Resolución* en la que denegó la expedición del auto de *certiorari*. Entre otros asuntos, no halló justificación para intervenir con el dictamen emitido por el tribunal de instancia, toda vez que no se demostró la existencia de error o abuso de discreción por parte del juzgador de los hechos.

Inconforme con la decisión del Tribunal de Apelaciones, el 14 de octubre de 2022, el Municipio presentó el recurso de *certiorari* que nos ocupa y señaló los errores siguientes:

(1) Erró el Tribunal de Apelaciones al denegar la expedición del recurso de [c]ertiorari a pesar de que se demostró la existencia de un error de derecho, pues una certificación es admisible en evidencia para sustentar una moción de sentencia sumaria parcial y no existe controversia del hecho material de que la [A]venida Luis Muñoz Rivera es estatal.

(2) Erró el Tribunal de Apelaciones al denegar la expedición del recurso de [c]ertiorari a pesar de que se demostró la existencia de un error de derecho al no aplicarse la inmunidad concedida a los municipios en el Art. 15.005(g) de la Ley de Municipios Autónomos.

El 8 de diciembre de 2022, expedimos el recurso de *certiorari* solicitado y le concedimos un término a las partes para que se expresaran en torno al mismo. Presentados

los alegatos oportunamente, el caso quedó sometido en los méritos el 14 de febrero de 2023.

Así las cosas, nos encontramos en posición de resolver las controversias ante nuestra consideración. Por estar estrechamente relacionados entre sí, discutiremos los señalamientos de error conjuntamente.

## II

A. *La moción de sentencia sumaria*

Reiteradamente hemos expresado que la moción de sentencia sumaria es un mecanismo procesal en nuestro ordenamiento jurídico para resolver controversias que no requieren la celebración de un juicio. Segarra Rivera v. Int'l. Shipping *et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo, utilizado con sabio discernimiento, facilita la solución justa, rápida y económica de los litigios civiles cuando éstos no presentan controversias genuinas de hechos materiales. Íd., págs. 978-979.

De acuerdo con la Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, procede dictar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica. Íd., pág. 980 (citando a Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 676 (2018)).

En cuanto al estándar de revisión apelativa sobre una solicitud de sentencia sumaria, este Tribunal ha establecido que el foro apelativo intermedio está limitado a: (1) considerar los documentos y argumentos que se presentaron ante el foro primario (lo cual implica que, en apelación, los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el tribunal de instancia ni esbozar nuevas teorías); (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. Íd., pág. 981. Así las cosas, los foros apelativos están en la misma posición que los tribunales de instancia y utilizan los mismos criterios para evaluar una solicitud de sentencia sumaria. Íd.

B. *Los estatutos vigentes sobre la conservación y mantenimiento de las carreteras*

1. *El Código Político de Puerto Rico de 1902*

En conformidad con el *Código Político de Puerto Rico* (Código Político), el Secretario del DTOP es responsable de mantener las carreteras a su cargo en buen estado de conservación. Art. 403 del Código Político, 3 LPRA sec. 421. De ahí que el Gobierno de Puerto Rico deba responder civilmente e indemnizar a los perjudicados por los daños y perjuicios ocasionados por desperfectos, falta de reparación o protección suficiente en cualquiera de sus vías de comunicación a cargo del DTOP, salvo que pruebe que los desperfectos fueron causados por la violencia de los

elementos y no hubo tiempo suficiente para remediarlos. Íd., Art. 404 del Código Político, 3 LPRA sec. 422.

2. *La Ley Núm. 49 de 1 de diciembre de 1917*

La Ley Núm. 49 de 1917, *supra*, impone al Secretario del DTOP la obligación ministerial de conservar y mantener "los trozos de carreteras que forman las travesías de los pueblos". Art. 1 de la Ley Núm. 49 de 1917, 9 LPRA sec. 12. Así, las vías que atraviesan las zonas urbanas de los pueblos que sean conservadas por el DTOP "serán consideradas como parte de las carreteras estaduales y sometidas a las disposiciones vigentes en la [L]ey para la conservación y policía de los caminos públicos del [Gobierno de Puerto Rico]".[6] Art. 2 de la Ley Núm. 49 de 1917, 9 LPRA sec. 13. A su vez, la mencionada disposición expone que "los municipios tendrán jurisdicción sobre las dos zonas urbanizadas,[7] a ambos lados de la travesía, y podrán fijar las alienaciones para construcción de edificios y aceras de acuerdo con lo que dispongan las ordenanzas municipales […]". Íd.

3. *La Ley Núm. 54 de 30 de mayo de 1973*

La Ley Núm. 54 de 30 de mayo de 1973, según enmendada, conocida como *Ley de administración, conservación y policía de las carreteras estatales de Puerto Rico* (Ley Núm. 54 de

---

[6]   Ley Núm. 54 de 30 de mayo de 1973, según enmendada, conocida como *Ley de administración, conservación y policía de las carreteras estatales de Puerto Rico*, 9 LPRA sec. 2101 *et seq*.

[7]   En Vélez v. La Capital, 77 DPR 701, 707 (1954), este Tribunal entendió que en el concepto "zonas urbanizadas" están incluidas las aceras y reatas o jardineras. Véase, además, Pérez v. Mun. de Lares, 155 DPR 697, 711 (2001).

1973), 9 LPRA sec. 2101 *et seq.*, define lo que es una carretera estatal sujeta a la responsabilidad del Estado en cuanto a custodia y conservación. A tales efectos, en su Art. 1-02 se dispone lo siguiente:

> [El término "carretera" significará:] cualquier vía pública estatal para el tránsito vehicular que haya sido construida de acuerdo a alguna Ley del Estado Libre Asociado de Puerto Rico o que, habiendo sido construida por una Agencia o Corporación Pública, Estatal o Federal o por un municipio, haya sido transferida legalmente al [DTOP] para su custodia y conservación. Una carretera está integrada por la zona de rodaje, el paseo, la servidumbre de paso, así como puentes, obras de desagüe, rótulos, señales, barreras protectoras y todas las construcciones protectoras, necesarias y convenientes para el mejor tránsito de los vehículos. 9 LPRA sec. 2102.

El referido artículo define, además, la servidumbre de paso como: "la superficie de terreno ocupada por la carretera, e incluirá el área de rodaje, paseos, cunetas y terrenos adyacentes hasta la colindancia con la propiedad privada".

4. *La responsabilidad por el mantenimiento y conservación de las aceras*

La casuística interpretativa sobre el mantenimiento y conservación de las aceras se ha mantenido casi inalterada con el pasar del tiempo. Así, en Vélez v. La Capital, 77 DPR 701, 708 (1954), interpretamos que el Municipio de San Juan era responsable del mantenimiento de las aceras a ambos lados de la Avenida de Diego, incluyendo las reatas o jardineras, por lo que tenía el deber de mantenerlas en buen estado de conservación. Posteriormente, en Oliver v. Municipio de Bayamón, 89 DPR 442, 445 (1963), expresamos

que, como parte de las obligaciones del municipio de mantener las aceras en razonable estado de uso, corresponde a éste tomar medidas necesarias para evitar causar daños ante una situación peligrosa. En aquel momento, señalamos que el municipio no podía librarse de responsabilidad al alegar que la situación de peligrosidad que había en la acera no estaba bajo su control debido a que el riesgo podía anticiparse.

En Del Toro v. Gob. de la Capital, 93 DPR 481, 484-485 (1966), reiteramos la norma esbozada hasta ese momento y aclaramos que el hecho de que un tercero acepte tener el dominio y control de una acera no exonera al municipio de responsabilidad. El deber de cuidado y mantenimiento de las aceras no termina cuando un tercero es quien ha creado el estado de inseguridad en éstas, si tiene o se le puede imputar conocimiento de la condición peligrosa al municipio.

Finalmente, en Pérez v. Mun. de Lares, *supra*, págs. 711-712, reiteramos que a tenor con la ley aplicable y nuestras expresiones previas, la responsabilidad por el mantenimiento y la conservación de las aceras que colindan con vías públicas estatales que atraviesan los pueblos competen a los municipios.

C. *El Art. 15.005 de la Ley de Municipios Autónomos*

La Ley de Municipios Autónomos, 21 LPRA ant. sec. 4001 *et seq.*, vigente al momento de los hechos objeto de esta reclamación, confirió a los municipios un mayor grado de

gobierno propio y autonomía fiscal. [8] La intención legislativa detrás de la aprobación del estatuto fue otorgarles a los municipios los poderes y facultades necesarios para asumir un rol activo en su desarrollo urbano, social y económico.[9]

Con el paso del tiempo, la referida legislación sufrió múltiples enmiendas. Así, el inciso (g) del Art. 15.005 fue incorporado a la Ley de Municipios Autónomos, *supra*, mediante la aprobación de la Ley Núm. 143 del 6 de septiembre de 2019, para proveerle a los municipios protección contra acciones o reclamaciones por daños y perjuicios cuando ocurran accidentes en las carreteras o aceras propiedad del Gobierno estatal. [10] El legislador consideró que la presentación de dichas acciones en contra de los municipios impactaría la precaria situación fiscal de estos últimos y provocaría un aumento significativo en los costos de las pólizas de responsabilidad pública.[11]

De hecho, según surge del trámite legislativo, para enmendar el Art. 15.005 de la Ley de Municipios Autónomos, *supra*, el Senado consideró injusto que los municipios tuvieran el deber de responder en daños y perjuicios por los accidentes ocurridos en las carreteras y aceras que son

---

[8] *Exposición de motivos* de la Ley de Municipios Autónomos, 21 LPRA ant. sec. 4001 *et seq*. Véase, además, Muñiz Burgos, Inc. v. Mun. Yauco, 187 DPR 665, 676 (2013).

[9] Íd.; Muñiz Burgos, Inc. v. Mun. Yauco, pág. 688.

[10] Véase la *Exposición de motivos* de la Ley Núm. 143-2019, para enmendar el Art. 15.005 de la Ley de Municipios Autónomos, 21 LPRA ant. sec. 4705.

[11] Íd.

dominio del Gobierno estatal, al no tener bajo su control la atención total de dichas infraestructuras.[12] La Cámara de Representantes, por su parte, entendió meritorio proteger a los municipios contra acciones por daños y perjuicios cuando los mismos ocurran en propiedad del Gobierno estatal, y sean el resultado de la falta de mantenimiento de este último a sus carreteras o aceras.[13]

Aprobada la enmienda a la mencionada ley, el Art. 15.005 de la Ley de Municipios Autónomos, *supra*, quedó configurado -en su parte pertinente- de la siguiente manera:

> No estarán autorizadas las acciones contra el municipio por daños y perjuicios a la persona o la propiedad por acto u omisión de un funcionario, agente o empleado de cualquier municipio:
>
> (a) En el cumplimiento de una ley, reglamento u ordenanza, aun cuando éstos resultaren ser nulos.
>
> (b) En el desempeño de una función de carácter discrecional, aun cuando hubiere abuso de discreción.
>
> (c) En la imposición o cobro de contribuciones.
>
> (d) Constitutivo de acometimiento, agresión u otro delito contra la persona, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura.
>
> (e) Ocurrida fuera de la jurisdicción territorial del Estado Libre Asociado de Puerto Rico.
>
> (f) En el desempeño de operaciones de combate por las fuerzas navales o militares en caso de guerra, invasión, rebelión u otra emergencia debidamente declarada como tal por las autoridades pertinentes.

---

[12] *Suplemento en apoyo de moción de sentencia sumaria parcial*, Apéndice del *certiorari*, págs. 133-145.

[13] Íd.

       (g) **Cuando ocurren accidentes en las carreteras o aceras estatales.** (Énfasis nuestro).

Del aludido articulado se desprende que el legislador, dentro de sus facultades constitucionales, prohibió la presentación de reclamaciones en daños y perjuicios en contra de los municipios, en la medida en que esté presente cualquiera de los incisos enunciados.[14] En ese sentido, la aprobación del inciso (g) del Art. 15.005 de la Ley de Municipios Autónomos, *supra*, incluyó una medida protectora adicional a favor de los municipios, la cual está limitada a la eventualidad de que ocurra un accidente en una carretera o acera estatal.[15] Nótese que la Asamblea Legislativa condicionó la falta de responsabilidad del municipio y la limitó únicamente para los propósitos autorizados en el Art. 15.005 de la Ley de Municipios Autónomos, *supra*.

### III

Según surge del presente caso, mientras la señora González Meléndez se encontraba corriendo por la acera de la Avenida Luis Muñoz Rivera, alegadamente se tropezó con unos tubos que se encontraban en el suelo cubiertos por grama, lo que provocó que se cayera. Al presentar su reclamación, la recurrida acumuló como partes codemandadas al Municipio, Gobierno de Puerto Rico, DTOP y otros. Durante

---

[14] Cabe destacar que, la Ley Núm. 107-2020, según enmendada, conocida como *Código Municipal de Puerto Rico*, 21 LPRA sec. 7001 *et seq.* (la cual derogó la Ley de Municipios Autónomos), contiene las mismas disposiciones de su antecesora en el Art. 1.053, 21 LPRA sec. 7084.

[15] Véase la *Exposición de motivos* de la Ley Núm. 143-2019, para enmendar el Art. 15.005 de la Ley de Municipios Autónomos. 21 LPRA ant. sec. 4705.

el desarrollo procesal del caso, las partes argumentaron sobre el control, jurisdicción y mantenimiento de la acera en cuestión. Sobre este particular, el Gobierno aceptó, en varias ocasiones, que la Avenida Luis Muñoz Rivera era estatal,[16] pero que el cuidado y mantenimiento de sus aceras correspondía al Municipio.

Más adelante en el pleito, el foro apelativo intermedio ordenó la desestimación de la demanda a favor del Gobierno debido a que la señora González Meléndez incumplió con el requisito de notificación oportuna al Estado sin acreditar justa causa para ello. Esto se ordenó en conformidad con la Ley de demandas contra el Estado, *supra*, 32 LPRA sec. 3077 *et seq.*

En virtud de la orden emitida por el Tribunal de Apelaciones y la moción de sentencia sumaria parcial presentada por el Municipio, el foro primario emitió una *Sentencia parcial*, en la que según mencionáramos anteriormente, señaló como hechos en controversia los siguientes:

> (1) Si para el 4 de junio de 2020, el Municipio cumplió con su deber de mantener la acera donde ocurrió el accidente en condiciones de razonable seguridad.
>
> (2) Si [la señora Dannelly] González Meléndez sufrió daños, angustias y sufrimientos mentales como consecuencia del accidente y la valoración de [é]stos.

---

[16] *Oposición a moción de sentencia sumaria*, Apéndice del *certiorari*, págs. 105-120; *Contestación a primer pliego de interrogatorio y requerimiento de producción de documentos*, Apéndice del *certiorari*, págs. 118-120.

(3) Si [la señora Dannelly] González Meléndez incurrió en negligencia comparada.

En cuanto a las conclusiones de hecho, determinó que la certificación que acompañó el Municipio en apoyo a su solicitud de sentencia sumaria no era admisible en evidencia debido a que contenía "hechos y conclusiones que van más allá de certificar que el Municipio no tiene responsabilidad por la acera" donde ocurrió el accidente de la recurrida. El foro primario sostiene que el Municipio debió presentar una declaración jurada basada en hechos específicos y que no estuviera centrada en conclusiones o una certificación en cumplimiento con las Reglas de Evidencia de Puerto Rico.

El tribunal de instancia concluyó, además, que según la Ley Núm. 49 de 1917, *supra*, y la jurisprudencia aplicable, el DTOP no tenía jurisdicción, control ni el mantenimiento de la acera donde está el objeto que ocasionó el accidente. Razonó que, a pesar de que la Avenida Luis Muñoz Rivera es estatal, el cuidado y el mantenimiento de las aceras es responsabilidad del Municipio. Por último, entendió que, "la presunta servidumbre de paso existente a favor del DTOP, no concluye que éste sea el dueño exclusivo de la acera en controversia o a quien corresponda su cuidado o mantenimiento". De este modo, el tribunal de instancia entendió que persistían controversias genuinas de hecho que le impedían dictar sentencia sumaria.

El Municipio recurrió de la mencionada sentencia parcial al tribunal apelativo intermedio, el cual denegó la

expedición del recurso de *certiorari* presentado. Ulteriormente, el peticionario compareció ante este Foro.

En cuanto a la contención del Municipio de que una certificación es admisible en evidencia para sustentar una moción de sentencia sumaria, le asiste la razón. Veamos.

La Regla 36.3 de Procedimiento Civil, *supra*, dispone que corresponde dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, **en unión a las declaraciones juradas**, **si las hay**, **u otra evidencia**, se acredita que no hay controversia real y sustancial respecto a algún hecho esencial y pertinente, y el derecho aplicable lo justifica. Íd. Véase, además, Const. José Carro v. Mun. Dorado, 186 DPR 113, 128-129 (2012). Es por ello que, coincidimos con la apreciación del Municipio cuando indica que la redacción de la Regla 36.3 de Procedimiento Civil, *supra*, expresamente reconoce que se puede presentar una moción de sentencia sumaria sin declaraciones juradas; sólo basta con remitirse al texto de la regla procesal para validar la razonabilidad de dicha interpretación. En el pasado hemos indicado que **"al evaluar una solicitud de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos de los cuales surjan admisiones hechas por las partes, sean o no parte de la solicitud de sentencia sumaria"**. (Énfasis nuestro). Const. José Carro v. Mun. Dorado, *supra*, pág. 130.

Aun cuando determináramos que la certificación presentada por el Municipio junto a su moción de sentencia sumaria parcial no es admisible en evidencia, los demás documentos que obran en el expediente ante nuestra consideración, y que tuvieron ante sí los tribunales inferiores, justifican que concluyamos que se cumplieron con los elementos suficientes para disponer sumariamente del caso. Nótese que el Gobierno aceptó en su *Oposición a moción de sentencia sumaria* y en la *Contestación a primer pliego de interrogatorios y requerimiento de producción de documentos* que la Avenida Luis Muñoz Rivera es una carretera estatal.[17]

A pesar de que el Gobierno hizo la admisión en torno a la carretera y no a la acera de la Avenida Luis Muñoz Rivera donde alegadamente ocurrió el accidente, lo cierto es que el concepto "carretera", según definido por la Ley Núm. 54 de 1973, *supra*, expresamente contempla las servidumbres de paso como parte de éstas. Al ser la Avenida Luis Muñoz Rivera una carretera estatal, de la cual forman parte las aceras, nos vemos precisados a respaldar la posición del Municipio en cuanto a que los foros recurridos se equivocaron al aplicar la ley del caso. Esto se debe a que, cuando ocurrió el accidente de la recurrida, ya estaba en vigor el inciso (g) del Art. 15.005 de la Ley de Municipios Autónomos, *supra*, el cual no autorizaba las acciones de

---

[17]  *Íd.*

daños y perjuicios en contra de los municipios cuando ocurrieran accidentes en carreteras o aceras estatales. Así pues, el factor determinante para que los municipios no respondan en daños y perjuicios es la existencia del vínculo directo entre un accidente y el hecho de que el mismo ocurra en una carretera o acera propiedad del Estado.

Debido a que los hechos ocurrieron mientras la Ley de Municipios Autónomos, *supra*, estaba vigente, la controversia debe ser evaluada a la luz de dicha normativa. En ese sentido, el inciso (g) del Art. 15.005, *supra*, prohibía las acciones en contra de los municipios por daños y perjuicios a la persona o propiedad cuando ocurrían accidentes en las carreteras o aceras estatales, tal y como sucedió en el presente caso. Toda vez que el Gobierno aceptó que la Avenida Luis Muñoz Rivera es estatal y, por ende, su acera, resulta inmaterial discutir si el Municipio mantuvo la servidumbre de paso en condiciones razonables, pues el legislador limitó su responsabilidad como cuestión de política pública.

De este modo, si cualquiera de las instancias del Art. 15.005 de la Ley de Municipios Autónomos, *supra*, se cumple, entonces se está ante una limitación para demandar a los municipios, para la cual no existe una excepción en ley. Se trata, pues, de una lista *numerus clausus* establecida por el legislador, la cual sólo puede ser variada por éste.

Dicho lo anterior, cuando la ley es clara y libre de ambigüedad, estamos obligados a cumplir con su texto.

Art. 14 del Código Civil de 1930, 31 LPRA ant. sec. 14 (derogado). Este precepto toma mayor relevancia al momento en que la intención manifestada por el legislador reafirma lo expuesto en el estatuto aprobado. Es por esto que, en nuestro ejercicio interpretativo, debemos garantizar que se cumpla el propósito inequívoco de la Asamblea Legislativa.

Cuando resolvimos el caso de Pérez v. Mun. de Lares, *supra*, el legislador no había enmendado la Ley de Municipios Autónomos, *supra*, para incluir el inciso (g) del Art. 15.005. Por ende, **las circunstancias particulares de cada caso no eran ni son las mismas**. Nótese que el Art. 15.005 de la Ley de Municipios Autónomos, *supra*, no deja margen a otra interpretación en tanto y en cuanto específicamente libera de responsabilidad a los municipios cuando, entre otras cosas, ocurren accidentes en carreteras o aceras estatales. Así las cosas, resolvemos que el Municipio posee inmunidad al amparo del inciso (g) del Art. 15.005 de la Ley de Municipios Autónomos, *supra*, por lo que la señora González Meléndez no cuenta con una causa de acción en contra de éste. Aun cuando pudo haber promovido su demanda en contra del Estado, la recurrida perdió su oportunidad al no cumplir con el requisito estatutario de notificación oportuna.

A la luz de lo anterior, concluimos que la demanda de daños y perjuicios presentada por la señora González Meléndez en contra del Municipio está vedada en virtud de la Ley de Municipios Autónomos, *supra*, por lo que procede

desestimar la misma conforme lo solicita la parte peticionaria. En consecuencia, resolvemos que erró el foro apelativo intermedio al denegar la expedición del auto de *certiorari*.

## IV

Por los fundamentos antes expresados, se revocan la *Resolución* emitida por el Tribunal de Apelaciones el 16 de septiembre de 2022 y la *Sentencia parcial* dictada por el Tribunal de Primera Instancia el 2 de junio de 2022. En consecuencia, se ordena la desestimación de la demanda incoada en contra del Municipio.

Se dictará Sentencia en conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Dannelly González Meléndez<br><br>      Recurrida<br><br>           v.<br><br>Municipio Autónomo de San Juan, a través de su Alcalde, Miguel A. Romero Lugo; Óptima Seguros; Estado Libre Asociado de Puerto Rico; Departamento de Transportación y Obras Públicas, a través de su Secretaria, Ing. Eileen M. Vélez Vega; Compañía Aseguradora A; Compañía Aseguradora B; Contratista A; John Doe; Compañía Privada AA<br><br>      Peticionarios | CC-2022-703 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico a 24 de julio de 2023.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revocan la *Resolución* emitida por el Tribunal de Apelaciones el 16 de septiembre de 2022 y la *Sentencia Parcial* dictada por el Tribunal de Primera Instancia el 2 de junio de 2022. En consecuencia, se ordena la desestimación de la demanda incoada en contra del Municipio.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente y hace constar la expresión siguiente, a la cual se unen el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez:

La interpretación de la mayoría sobre el Artículo 15.005 de la *Ley de Municipios Autónomos de Puerto Rico*, 21 LPRA ant. sec. 4705, restringe de manera agresiva e innecesaria la capacidad de

las personas para reclamar por los daños que ocasionan los actos u omisiones que causan los municipios. No me es factible concluir que la Asamblea Legislativa quiso darle una carta blanca a la negligencia de los municipios a costa del bienestar de la ciudadanía, y de la capacidad real del gobierno central para responder por el cuidado de nuestras carreteras, caminos y zonas aledañas.

Lo resuelto, a su vez, está desasociado de la realidad que, como cuestión de hecho y práctica, configura la relación entre el Gobierno Central y los municipios al establecer convenios para mantener las carreteras estatales y sus zonas aledañas, cuando estas discurren por ciertas demarcaciones municipales. Tales convenios viabilizan que la municipalidad pueda tomar acción sobre áreas bajo el dominio del Gobierno Central, pero que afectan la calidad de vida de la población municipal, así como el desarrollo económico del municipio. Así lo comprobamos luego de la debacle de los huracanes Irma y María —y más recientemente del huracán Fiona—, cuyas secuelas todavía son evidentes para quienes discurrimos a diario por nuestras carreteras. Para los municipios, la ausencia de estos convenios —los cuales confieren a los municipios autoridad y jurisdicción sobre propiedad estatal— es perjudicial por demás. Hoy quedan a la merced de que el Departamento de Transportación y Obras Públicas lleve a cabo las obras y mejoras necesarias a su ritmo, cuando pueda y como pueda pues nadie pone en duda la falta de recursos y el volumen enorme de los proyectos.

Colegir que la Asamblea Legislativa concedió inmunidad <u>absoluta</u> a los ayuntamientos ante el dominio del Estado sobre las carreteras o aceras contrarresta indebidamente con el mandato legal para que los municipios mantengan estas áreas en condiciones adecuadas, cuando tienen su control y mantenimiento.

Asimismo, no me parece aconsejable dilucidar este asunto por la vía sumaria. El Tribunal de Primera Instancia actuó de manera adecuada al permitir que el pleito siguiera su curso natural y las partes llevaran a cabo el descubrimiento de prueba necesario para adjudicar la controversia sobre si la acera en donde ocurrió el accidente de la señora González Meléndez estaba bajo el control y jurisdicción del Municipio de San Juan para su mantenimiento y cuidado.

Porque lo resuelto limita la capacidad de las personas agraviadas para ejercer sus reclamos contra el municipio que le ocasionó daños, porque lo resuelto no es ejecutable, y por su efecto paralizador en el establecimiento de convenios que tienen beneficios tangibles para la ciudanía, disiento.

El Juez Asociado señor Estrella Martínez disiente y emite la expresión siguiente, a la cual se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez:

La decisión que hoy avala una mayoría de este Tribunal es prematura e interfiere de forma excesiva e injustificada con la facultad del Tribunal de Primera Instancia para denegar una solicitud de sentencia sumaria en etapas tempranas del procedimiento. Ello es particularmente problemático en este caso toda vez que del propio razonamiento mayoritario emana cuán imperativo era permitir un descubrimiento de prueba exhaustivo.

Ciertamente, las contradicciones e interrogantes abrumadoras que surgen del expediente con respecto a la responsabilidad que podía tener el Municipio de San Juan sobre la acera donde ocurrió el incidente exigían la continuación de los procedimientos según lo determinó el foro de primera instancia. Sin embargo, este Tribunal arribó a la conclusión de que el inciso (g) del Art. 15.005 de la derogada Ley de Municipios Autónomos de Puerto Rico, 21 LPRA ant. sec. 4705, hoy equivalente al inciso (g) del Art. 1.053 de la Ley Núm. 107 de 14 de agosto de 2020, según enmendada, 21 LPRA sec. 7084, confería inmunidad absoluta a un municipio por cualquier accidente que tomara lugar en una acera o carretera estatal.

A través de esta interpretación --en extremo amplia--, se ignora que existen escenarios en los que, voluntariamente o por contratación, los municipios ejercen funciones sobre tales aceras o carreteras y, por tanto, podrían tener responsabilidad sobre lo que ocurre en estas, como, por ejemplo, abandonar ciertos tubos en un área donde no son visibles sobre los cuales puede tropezarse un pedestre, tal y como ocurrió en este caso. De hecho, conforme lo reconoce la propia *Opinión*, el Estado argumentó que, si bien la acera donde ocurrió el accidente es estatal, **su control, cuidado y mantenimiento correspondían al Municipio.**

Ahora bien, en vez de permitir el esclarecimiento de un aspecto tan importante de lo aquí reclamado, la Mayoría pauta que la disposición antes citada no contempla situación alguna en la que un municipio responde bajo tales circunstancias. Esto, sin importar la posibilidad de que el municipio sea causante o co-causante de un daño, pues el factor determinante es la existencia de un vínculo directo entre el accidente y la posesión de la carretera o acera. Tal análisis absolutista opera inequívocamente en total oposición al estándar prevalente en nuestro ordenamiento que requiere una relación causal entre el daño y quien lo causó. Es inimaginable que la intención de la Asamblea Legislativa fuera crear zonas de inmunidad absoluta para los municipios predicadas meramente en la posesión de la localidad por parte del Estado. No puedo avalar que en esas circunstancias se le otorgue una carta en blanco a los municipios que los libere de toda responsabilidad por los daños que sufre un ciudadano.

En fin, por entender que el Tribunal de Primera Instancia no erró en denegar una solicitud de sentencia sumaria en etapas tan tempranas del procedimiento y que era necesario permitir un descubrimiento de prueba cabal, disiento.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo