CC-1999-604                                          1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Irma Pérez Pérez<br>    Demandante<br><br>        v.<br><br>Gobierno Municipal de Lares rep.<br>por su Alcalde Hon. Héctor Hernández<br>Arana, etc.<br>    Demandados-Peticionarios<br><br>        v.<br><br>Estado Libre Asociado de Puerto Rico<br>    Tercero Demandado<br>    Recurrido | Certiorari<br><br>2001 TSPR 160<br><br>155 DPR ____ |

Número del Caso: CC-1999-604


Fecha: 27/noviembre/2001


Tribunal de Circuito de Apelaciones:
                        Circuito Regional III


Juez Ponente:
                        Hon. Carmen Ana Pesante Martínez


Abogados de la Parte Peticionaria:
                        Lcdo. Héctor L. Fuertes Romeu
                        Lcdo. Carlos A. Dasta Meléndez


Oficina del Procurador General:
                        Lcda. Vanessa Ramírez
                        Procuradora General Auxiliar


Materia:  Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Irma Pérez Pérez
    Demandante

        v.

Gobierno Municipal de Lares
rep. por su Alcalde
Hon. Héctor Hernández Arana
y su compañía aseguradora
Admiral Insurance Company
 Demandados Peticionarios         CC-1999-604     Certiorari

        v.

Estado Libre Asociado de
Puerto Rico

    Tercero Demandado
        Recurrido

PER CURIAM

San Juan, Puerto Rico, a 27 de noviembre de 2001.

**El Municipio de Lares nos solicita la revisión de una resolución dictada por el Tribunal de Circuito de Apelaciones que revocó una sentencia parcial emitida por el Tribunal de Primera Instancia, Sala Superior de Utuado. Dicha sentencia parcial desestimó una causa de acción en daños y perjuicios en contra del Municipio de Lares.**

I

**El 12 de abril de 1996, la señora Irma Pérez Pérez, en adelante la parte demandante, radicó una demanda sobre daños y perjuicios en contra del Municipio de Lares y su compañía aseguradora,**

**Admiral Insurance Company.  La parte demandante alegó que el 11 de julio de 1995, mientras caminaba por la acera que transcurre paralela a la carretera número PR-111 frente a la Escuela Municipal Mariano Reyes, sufrió una caída.  Arguyó que dicha caída fue el resultado de un desnivel en la acera y que, a consecuencia de lo ocurrido, sufrió lesiones en la espalda, la cadera y la rodilla izquierda.  La parte demandante argumentó que la acera en donde había ocurrido el accidente le pertenecía al Municipio de Lares, y que éste había sido negligente, al no proporcionarle el mantenimiento adecuado ni realizarle las reparaciones necesarias. Alegó que dicha negligencia fue la causa próxima de su caída,  por lo que le reclamó solidariamente al Municipio de Lares y a su compañía aseguradora la suma de setenta y cinco mil dólares ($75,000) por los daños físicos y angustias mentales sufridas.[1]**

El 21 de octubre de 1997, el Municipio de Lares presentó demanda contra tercero contra el Estado Libre Asociado de Puerto Rico.  El municipio alegó que la carretera número PR-111 y la acera en donde había ocurrido la caída le pertenecían al Gobierno Estatal.  Añadió que el Departamento de Transportación y Obras Públicas Estatal era quien le brindaba el servicio de mantenimiento a dicha acera.  En consecuencia, el Municipio de Lares arguyó que no tenía control ni jurisdicción sobre el lugar en donde ocurrió el accidente y que el Estado Libre Asociado de Puerto Rico era exclusivamente responsable a la parte demandante por todo o por parte de sus reclamaciones.[2]

El 19 de marzo de 1997, el Estado presentó "Moción Solicitando Desestimación y/o Sentencia Sumaria",[3] aceptando que tenía la jurisdicción y el control sobre la carretera número PR-111 y que le brindaba los servicios de mantenimiento a ésta.  No obstante, acompañó su solicitud de sentencia sumaria con una declaración jurada del Subdirector Ejecutivo de la Directoría de Obras Públicas Estatal aclarando que, a tenor con la Ley Núm.

---

[1] Apéndice I del recurso de <u>Certiorari</u>, págs. 15-17.

[2] Íd., págs. 18-19.

[3] Íd., págs. 20-24.

49 de 1 de diciembre de 1917,[4] el Estado no tenía la jurisdicción y el control sobre la acera donde ocurrió el accidente. Arguyó que ésta era jurisdicción y estaba bajo el control del Municipio de Lares. El Municipio de Lares presentó oposición a dicha solicitud de desestimación argumentando que, conforme a la Ley de Administración, Conservación y Policía de las Carreteras Estatales[5], la servidumbre de paso es parte integral de lo que constituye una carretera estatal. Arguyó que la acera constituye una servidumbre de paso. Adujo que no habiéndose efectuado un traspaso de la carretera número PR-111 al Municipio de Lares, la jurisdicción de la referida carretera y la acera permanece en manos del gobierno estatal. La moción de desestimación y/o sentencia sumaria fue declarada no ha lugar el 17 de abril de 1998.[6]

El 18 de noviembre de 1998, el Tribunal de Primera Instancia, Sala Superior de Utuado, luego de celebrar una vista evidenciaria, dictó sentencia parcial desestimando la demanda presentada contra el Municipio de Lares.[7] Dicho Tribunal entendió que la evidencia testifical presentada no demostró que la carretera número PR-111 hubiese sido traspasada al Municipio de Lares, conforme el Artículo 6 de la Ley Núm. 49, supra.[8] Sostuvo su determinación en lo resuelto por este Tribunal en Ortiz Carrasquillo v. Municipio de Naguabo.[9] Determinó que la jurisdicción de la acera le pertenecía al Estado Libre Asociado de Puerto Rico. Este último presentó

---

[4] 9 L.P.R.A. secs. 12-18.

[5] Ley Núm. 54 de 30 de mayo de 1973, 9 L.P.R.A. sec. 2101 et seq.

[6] Apéndice I del recurso de Certiorari, pág. 30.

[7] Apéndice VI del recurso de Certiorari, págs. 85-88.

[8] 9 L.P.R.A. sec. 17.

[9] 108 D.P.R. 366 (1979). En dicho caso la parte demandante radicó una acción de daños y perjuicios contra el Estado Libre Asociado de Puerto Rico y el Municipio de Naguabo, por un accidente ocurrido a consecuencia de un desperfecto en una carretera de ese municipio. Concluimos que para determinar lo que constituye una carretera estatal sujeta a la responsabilidad del Estado hay que recurrir al Artículo 1-02 de la Ley de Administración, Conservación y Policía de las Carreteras Estatales de Puerto Rico, supra. Resolvimos que de acuerdo con el mencionado artículo la carretera donde ocurrió el accidente no le pertenecía al Estado Libre Asociado de Puerto Rico, sino al municipio.

una moción de reconsideración el 9 de diciembre de 1998. La misma fue declarada no ha lugar el 12 de enero de 1999.[10]

Inconforme, el Estado presentó el 1 de marzo de 1999 un recurso de Certiorari ante el Tribunal de Circuito de Apelaciones. Dicho Tribunal expidió el auto solicitado y revocó la determinación del Tribunal de Primera Instancia el 11 de mayo de 1999.[11] Concluyó que la acera le pertenecía al Municipio de Lares. Fundamentó su posición en lo resuelto por este Tribunal en Vélez v. La Capital,[12] y en su interpretación de las disposiciones contenidas en la Ley Núm. 49, supra, y en la Ley de Administración, Conservación y Policía de las Carreteras Estatales de Puerto Rico, supra. El Municipio de Lares presentó el 2 de junio de 1999 una moción de reconsideración ante el Tribunal de Circuito de Apelaciones.[13] Argumentó que el caso de Vélez v. La Capital, supra, fue resuelto antes de la promulgación de la Ley de Administración, Conservación y Policía de las Carreteras Estatales, supra, por lo que no era de aplicación al caso de autos. La moción de reconsideración fue declarada no ha lugar el 4 de junio de 1999.[14]

**Inconforme con dicha determinación, el Municipio de Lares y Admiral Insurance Company acuden ante nos, señalando como errores cometidos por el Tribunal de Circuito de Apelaciones los siguientes:**

> A) Erró el Honorable (sic) Tribunal de Circuito de Apelaciones[,] Circuito Regional III (Arecibo-Utuado) al revocar la sentencia del Honorable (sic) Tribunal de Primera Instancia, Sala Superior de Utuado.

[10] Apéndice I del recurso de Certiorari, pág. 14.

[11] Apéndice III, Íd., págs. 67-77.

[12] 77 D.P.R. 701 (1954). En esa ocasión, este Tribunal entendió en la controversia de si el Pueblo de Puerto Rico o el Gobierno de la Capital le era responsable a la parte demandante de los daños y perjuicios sufridos a consecuencia de una caída en la acera de la Avenida José de Diego en Santurce. Concluimos que la intención legislativa detrás de la Resolución Conjunta Número 16 de 27 de abril de 1933 (Leyes de Puerto Rico 1932-33, pág. 655) era traspasar al Pueblo de Puerto Rico el control y el dominio de las calles y travesías utilizadas por vehículos de cualquier clase para transitar. **Sin embargo, dicha resolución dispuso expresamente que las zonas urbanizadas a ambos lados de las calles y las travesías traspasadas quedarían bajo la jurisdicción y el dominio del Gobierno de la Capital. Estas zonas urbanizadas incluían las aceras y las reatas o jardineras.**

[13] Apéndice V del recurso de Certiorari, pág. 84.

[14] Apéndice IV, Íd., págs. 78-82.

B) Erró el Honorable (sic) Tribunal de Circuito de Apelaciones[,] Circuito Regional III (Arecibo-Utuado) al determinar que el Municipio de Lares es el que ostenta la jurisdicción de la acera en la carretera #111.

**Sometidos los alegatos de las partes, estamos en posición de resolver.**

II

**Antes de entrar en los señalamientos de error planteados por los peticionarios, es menester atender y resolver la solicitud contenida en su alegato para que esta Curia tome conocimiento judicial del plano de la carretera número PR-111 que se encuentra archivado en el Departamento de Transportación y Obras Públicas de Puerto Rico. Requieren que, mediante dicho plano, determinemos si la acera donde ocurrió la caída está comprendida dentro del área destinada para la servidumbre de paso de la carretera número PR-111. Sostienen que su solicitud es procedente, por ser el registro de planos de carreteras del Departamento de Transportación y Obras Públicas uno público y por ser dicho hecho uno susceptible de determinación inmediata y exacta.**

**La Regla 11 de Evidencia[15] dispone lo siguiente:**

> **(A) Los tribunales podrán tomar conocimiento judicial de hechos que no son razonablemente objeto de controversia por:**
>
> **(1) Ser de conocimiento general dentro de la jurisdicción territorial del tribunal, o**
>
> **(2)** ser susceptibles de determinación inmediata y exacta recurriendo a fuentes cuya exactitud no puede ser razonablemente cuestionada. **(Énfasis nuestro.)**
>
> **(B) Los tribunales podrán tomar conocimiento judicial, a iniciativa propia y deberán tomar conocimiento judicial a solicitud de parte** cuando ésta provea al tribunal con información suficiente para permitirle que tome tal conocimiento. **(Énfasis nuestro.)**
>
> **(C) La parte que solicita que se tome conocimiento judicial de un hecho debe notificar la solicitud a la parte adversa para dar oportunidad a ésta de prepararse y enfrentarse a la solicitud, si así lo estimare conveniente. Una parte tiene derecho a ser oída en torno a si procede tomar conocimiento judicial.**

---

[15] 32 L.P.R.A. Ap. IV, R. 11.

**(D)** Los tribunales podrán tomar conocimiento judicial en cualquier etapa de los procedimientos, incluyendo la etapa apelativa. **(Énfasis nuestro.)**

**(E) En casos criminales por jurado el juez instruirá a los miembros del jurado de que deben aceptar como concluyente cualquier hecho del cual se haya tomado conocimiento judicial.**

Esta regla regula lo relativo al conocimiento judicial de hechos adjudicativos, es decir los hechos que están en controversia de acuerdo con las alegaciones de las partes y del derecho sustantivo que rige el asunto.[16] Esta regla permite que se tome conocimiento judicial de dichos hechos, cuando se establece que éstos son de conocimiento general dentro de la jurisdicción territorial o cuando éstos son susceptibles de determinación inmediata y exacta a través de una fuente, cuya exactitud no puede ser cuestionada.[17] En relación con este segundo criterio, se requiere que los hechos adjudicativos satisfagan un elemento de indisputabilidad. Esto es, que sean de fácil y precisa corroboración. El tratadista Chiesa expone que el peso de persuadir al tribunal de la indisputabilidad de los hechos adjudicativos recae en la parte que pretende que se tome conocimiento judicial.[18] Para que un tribunal pueda tomar conocimiento judicial de un hecho adjudicativo, es necesario que la parte proponente ponga al tribunal en condición de poder hacerlo. Esto se debe a que el conocimiento judicial se funda en la economía procesal probatoria, ya que sustituye la presentación de evidencia ante el Tribunal de Primera Instancia sea ésta testifical, documental o de otra índole.[19]

A la luz de la doctrina expuesta, concluimos que lo solicitado por los peticionarios no es procedente. Los peticionarios no colocaron a este Tribunal en posición de tomar conocimiento judicial del hecho pretendido. Copia certificada del plano de la carretera estatal número PR-111, del

---

[16] Asoc. de Periodistas v. González, 127 D.P.R. 704 (1991).

[17] Íd.

[18] E.L. Chiesa, Tratado de Derecho Probatorio, San Juan, Publicaciones J.T.S., 2000, T. II, pág. 1139.

[19] Íd.

cual se solicita se tome conocimiento judicial, no fue presentado ante este Tribunal.

Atendida la solicitud de los peticionarios, procedemos a discutir sus señalamientos de error.


### III

Discutiremos ambos señalamientos de error, por estar íntimamente relacionados.

La controversia ante nos gira en torno a quién tiene la jurisdicción y el control sobre la acera en donde ocurrió la caída. Para cumplir con nuestra encomienda, debemos interpretar de manera armónica las disposiciones pertinentes de la Ley Núm. 49, supra, y la Ley de Administración, Conservación y Policía de Puerto Rico, supra.

En nuestro ministerio de interpretar las leyes nos regimos por unas normas de hermenéutica que delimitan nuestra función. Los tribunales debemos siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobar una legislación, de manera que nuestra interpretación asegure la efectividad de la intención legislativa.[20] Interpretar una ley de forma contraria a la intención legislativa implica una usurpación por la Rama Judicial de las funciones de la Rama Legislativa. El texto de la ley, cuando éste es claro y libre de ambigüedad, no debe ser menospreciado bajo el pretexto de cumplir el espíritu de la misma.[21] Ante un lenguaje claro e inequívoco del legislador, el texto de la ley es la expresión por excelencia de la intención legislativa.[22] La literalidad de una ley sólo puede ser ignorada cuando ésta es claramente contraria a la

---

[20] Irrizarry v. J & J Cons. Prods., Co., Inc., res. el 27 de enero de 2000, 2000 TSPR 15, 150 D.P.R. ___ (2000), 2000 J.T.S. 27; Dorante v. Wrangler of P.R., res. el 27 de abril de 1998, 98 TSPR 50, 145 D.P.R. ___ (1998), 98 J.T.S. 49; Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991).

[21] 31 L.P.R.A. sec. 14.

[22] Irrizarry v. J & J Cons. Prods., Co., Inc., supra.

verdadera intención o propósito legislativo.[23]  Es entonces cuando debemos consultar el historial del estatuto que estamos interpretando. [24]   La exposición de motivos de la ley, los informes de las comisiones y los debates en el hemiciclo, en adición al texto de la misma, son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo.[25] Debemos tomar en consideración que todo acto legislativo persigue un propósito, trata de corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico o bienestar en general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno, entre otros.  En el proceso de encontrar el significado de una ley que logre los propósitos del legislador, la interpretación debe hacerse con fines socialmente útiles.[26]  Por último, es obligación del Tribunal armonizar, hasta donde sea posible, todas las disposiciones de ley envueltas en el caso con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador.[27]

La Ley Núm. 49, supra, fue aprobada con el propósito de imponerle al entonces Comisionado del Interior de Puerto Rico la obligación ministerial de conservar y mantener **los trozos de carreteras insulares que atraviesan las zonas urbanas de los pueblos, conocidos como travesías.**[28]  A estos efectos, dicha ley dispone, en su Artículo 1,[29] lo siguiente:

> Por la presente se ordena al Secretario de Transportación y Obras Públicas **la conservación,** por cuenta de su Departamento, **de los trozos de**

---

[23] Sucn. Álvarez v. Srio. de Justicia, res. el 11 de febrero de 2000, 2000 TSPR 21, 150 D.P.R. \_\_\_\_ (2000), 2000 J.T.S. 40; Pueblo v. Zayas Rodríguez, res. el 17 de febrero de 1999, 99 TSPR 15, 147 D.P.R. \_\_\_ (1999), 99 J.T.S. 16.

[24] Piñero v. A.A.A., res. el 23 de octubre de 1998, 1998 TSPR 141, 146 D.P.R. \_\_\_ (1998), 98 J.T.S. 140.

[25] Pueblo v. Zayas Rodríguez, supra.

[26] Íd.

[27] Andino v. Fajardo Sugar Co. 82 D.P.R. 85 (1961).

[28] Véase 1917 Leyes de Puerto Rico, págs. 357-358.

[29] 9 L.P.R.A. sec. 12.  El Comisionado del Interior pasó a ser el Secretario de Obras Públicas, a tenor con la Ley Núm. 6 de 24 de julio de 1952, y éste, a su vez, el Secretario de Transportación y Obras Públicas por virtud del Plan de Reorganización Número 6 de 1971, 3 L.P.R.A. Ap. III.

**carreteras que forman las travesías de los pueblos.**
(Énfasis nuestro.)


Dicha ley establece, además, que las travesías de los pueblos que sean así conservadas por el Departamento de Transportación y Obras Públicas de Puerto Rico, serán consideradas como parte de las carreteras estatales y sometidas a las disposiciones vigentes de la ley para la conservación y policía de los caminos públicos.  Esto se recoge en el Artículo 2[30] de la misma, que dispone lo siguiente:

> Las travesías de los pueblos que por virtud de las secs. 12 a 18 de este título sean conservadas por el Departamento de Transportación y Obras Públicas serán consideradas como parte de las carreteras estaduales y sometidas a las disposiciones vigentes en la ley para la conservación y policía de los caminos públicos del Estado Libre Asociado.

Sin embargo, dicho artículo también establece, **de una manera clara y palmaria**, lo siguiente:

> **Los municipios tendrán jurisdicción sobre las dos zonas urbanizadas, a ambos lados de la travesía, y podrán fijar las alineaciones para construcción de edificios y aceras de acuerdo con lo que dispongan las ordenanzas municipales.** (Énfasis nuestro.)

Por otro lado, la Ley de Administración, Conservación y Policía de Puerto Rico, supra, en su Artículo 1-02,[31] define lo que es una carretera estatal, sujeta a la responsabilidad del Estado en cuanto a custodia y conservación, y con relación a lo anterior dispone lo siguiente:

> (a) **"Carretera"** [significará] cualquier vía pública estatal para el **tránsito vehicular** que haya sido construida de acuerdo a alguna ley del Estado Libre Asociado de Puerto Rico o que, habiendo sido construida por una Agencia o Corporación Pública, Estatal o Federal o por un municipio, **haya sido transferida legalmente al Departamento de Transportación y Obras Públicas para su custodia y conservación.** Una carretera está integrada por la zona de rodaje, el paseo, la servidumbre de paso, así como puentes, obras de desagüe, rótulos, señales, barreras protectoras y todas las construcciones protectoras, necesarias y convenientes para el **mejor tránsito de los vehículos.** (Énfasis nuestro.)
>
> ...

---

[30] 9 L.P.R.A. sec. 13.

[31] 9 L.P.R.A. sec. 2102.

> (f) **"Servidumbre de paso"** significará la superficie de terreno ocupada por la carretera, e incluirá el área de rodaje, paseos, cunetas y terrenos adyacentes hasta la colindancia con la propiedad privada.

Cuando la Asamblea Legislativa aprobó en 1973 la Ley de Administración, Conservación y Policía de Puerto Rico, _supra_, decidió dejar vigentes las disposiciones de la Ley Núm. 49, _supra_, aplicables específicamente a las travesías de Puerto Rico. Presumimos que este acto legislativo tuvo la intención de que las travesías de Puerto Rico tuvieran un tratamiento en armonía con su propósito y espíritu. Dichos tramos de carretera se considerarían carreteras estatales para los efectos de su conservación, sin embargo, la jurisdicción de las zonas urbanizadas y lo concerniente a la construcción de las aceras paralelas a éstas permanecerían bajo el control de los municipios. Igual trato se le han dado a las aceras que discurren paralelas a las travesías en los Estados de la Unión. La sección 54.25.30 de Municipal Corporations de McQuillin establece lo siguiente:[32]

...

> On the other hand, where a statute provides that the jurisdiction and control of the state over state **trunkline highways running through cities**, with regard to maintenance and liability, extends only to that portion used **for vehicular traffic, the city is liable for the maintenance of sidewalks.** (Énfasis nuestro.)

Lo antes expresado varía, cuando el municipio por donde discurre la travesía decide conservar, a su propio cargo, el tramo de carretera. El artículo 4 de la Ley Núm. 49, _supra_, específicamente reglamenta el procedimiento para que un municipio sea exceptuado de las disposiciones de ese estatuto. Dicho artículo lee de la manera siguiente:[33]

> Podrán ser exceptuadas de los efectos de las secs. 12 a 18 de este título las travesías de aquellos pueblos cuyos municipios declaren su deseo de no aceptar la intervención del Departamento de Transportación y Obras Públicas en la conservación de sus travesías. **Esta declaración deberá ser remitida al Secretario**

---

[32] E. McQuillin, _Municipal Corporations_, 3ra ed., Illinois, Clark, Boardman, Callaghan, 1994, vol. 19, sec. 54.25.30, pág. 122. Véase también la sección 54.35.30.

[33] 9 L.P.R.A. sec. 15.

**de Transportación y Obras Públicas por conducto del Secretario de Estado.** (Énfasis nuestro.)

Por otro lado, el Artículo 6 de la Ley Núm. 49, supra, establece el procedimiento a seguir cuando un municipio, una vez acogido a los beneficios del estatuto, decide encargarse de la conservación de la travesía. Dicho artículo lee de la manera siguiente:[34]

> En caso de que algún municipio de los que queden acogidos al beneficio de las secs. 12 a 18 de este título, resuelva pavimentar la travesía o dotarla de un firme de mejores condiciones que el que pueda ser construido por el Departamento de Transportación y Obras Públicas, el Secretario podrá hacer entrega al municipio del trozo correspondiente a la travesía. La entrega o traspaso de las travesías de los municipios al Secretario de Transportación y Obras Públicas, o viceversa, deberá constar en acta de la sesión que con tal objeto celebre el concejo municipal. Dicha acta deberá ser firmada también por el representante del Secretario de Transportación y Obras Públicas que entregue o reciba la travesía, copia de la cual se enviará al Secretario de Transportación y Obras Públicas y al Secretario de Estado.

No surge del expediente ante nos que el municipio hubiera remitido una declaración al Secretario de Transportación y Obras Públicas, por conducto del Secretario de Estado, exceptuándose de la aplicación de las disposiciones estatutarias contenidas en los Artículos 1 al 7 de la Ley Núm. 49, supra.[35]

Lo planteado por los peticionarios, a los efectos de que la controversia de autos se resuelve a base de lo pautado por este Tribunal en Ortiz Carrasquillo v. Municipio de Naguabo, supra, carece de mérito. Estimamos que los hechos que tuvo este Tribunal en dicho caso son distinguibles de los que evaluamos en esta ocasión. En dicha oportunidad determinamos la responsabilidad por un desperfecto en un **camino vecinal** que ocasionó un **accidente vehicular.** Aquella controversia no presentó discusión alguna sobre la responsabilidad del municipio **por un defecto en una acera que transcurre paralela a una travesía.**

No obstante, los hechos que enfrentamos en Vélez v. La Capital, supra, son muy parecidos a los de autos. En dicha ocasión concluimos que el Gobierno de la Capital era responsable por una caída sufrida por un peatón

---

[34] 9 L.P.R.A. sec. 17.

mientras transitaba por una acera en Santurce. Tomamos en consideración el lenguaje claro y expreso de la Resolución Conjunta Número 16, supra. Su Sección 2 establecía, en un lenguaje muy similar al contenido en el Artículo 2 de la Ley Núm. 49, supra, que las zonas urbanizadas a ambos lados de las travesías estarían bajo la jurisdicción del Gobierno de la Capital. En dicha ocasión determinamos que dentro del concepto "zonas urbanizadas" quedaban incluidas **las aceras y reatas o jardineras** a ambos lados de las travesías.

Concluimos que la acera paralela a la carretera número PR-111 es jurisdicción y está bajo el control del Municipio de Lares. Tal curso de acción es cónsono con la intención legislativa de mantener vigentes las disposiciones de la Ley Núm. 49, supra, relativas a las travesías de Puerto Rico al momento de promulgar la Ley de Administración, Conservación y Policía de Puerto Rico, supra. Esta determinación cumple, además, con nuestro ministerio interpretativo de evaluar y analizar si la intención legislativa de ambos estatutos armonizan entre sí.

Finalmente, reiteramos la doctrina establecida por este Tribunal en cuanto a la responsabilidad de los municipios por la condición de sus aceras. Si existía una condición peligrosa en la referida acera, controversia que no estamos resolviendo en este momento, aún cuando ésta no hubiera sido causada por el Municipio de Lares, existe un deber de éste de mantenerla en razonable estado de seguridad. El municipio no tiene que mantenerla en un estado perfecto, ni ser un asegurador absoluto de la seguridad de todo peatón, pero sí tiene tal deber y obligación.[36]

IV

A la luz de lo antes expresado, procede confirmar la sentencia recurrida emitida por el Tribunal de Circuito de Apelaciones y devolver el caso al Tribunal de Primera Instancia, Sala Superior de Utuado, para ulteriores

---

[35] 9 L.P.R.A. secs. 12-18.

[36] Del Toro v. Gobierno de la Capital, 93 D.P.R. 481 (1966); Oliver v. Municipio de Bayamón, 89 D.P.R. 442 (1963); Vélez v. Gobierno de la Capital,

procedimientos, de conformidad con lo aquí dispuesto.  No es procedente la desestimación de la acción en daños y perjuicios presentada ante el Tribunal de Primera Instancia en contra del Municipio de Lares, por tener éste la jurisdicción y el control de la acera en donde ocurrió la caída que sufrió la parte demandante.

Se dictará sentencia de conformidad.

---

supra; Davidson v. H.I. Hettinger & Co., 62 D.P.R. 301 (1943).  Véase también McQuillin, op. cit., sec. 54.43.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Irma Pérez Pérez
      Demandante

            v.

Gobierno Municipal de Lares
rep. por su Alcalde
Hon. Héctor Hernández Arana
y su compañía aseguradora
Admiral Insurance Company
  Demandados Peticionarios                        Certiorari
                                                  CC-1999-604
            v.

Estado Libre Asociado de
Puerto Rico
Tercero Demandado Recurrido

SENTENCIA


San Juan, Puerto Rico, a 27 de noviembre de 2001.


Por los fundamentos expuestos en la Opinión **Per Curiam** que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia confirmando la sentencia recurrida emitida por el Tribunal de Circuito de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Utuado, para ulteriores procedimientos, de conformidad con lo aquí dispuesto.

No es procedente la desestimación de la acción en daños y perjuicios presentada ante el Tribunal de Primera Instancia en contra del Municipio de Lares, por tener éste la jurisdicción y el control de la acera en donde ocurrió la caída que sufrió la parte demandante.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.


**Isabel Llompart Zeno**
**Secretaria del Tribunal Supremo**