Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| **FAUSTINO XAVIER BETANCOURT COLON** | | **APELACION** |
|---|---|---|
| Apelante | | Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
| v. | KLAN202300206 | |
| **SUPERMERCADO CASLOP INC.: FULANO DE TAL** | | Civil núm.: **SJ2021CV02775** |
| Apelados | | Sobre: **Petición de Orden** |

Panel integrado por su presidente el Juez Rivera Colón, la Jueza Brignoni Mártir y el Juez Pérez Ocasio[2].

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante nos, Faustino Betancourt Colón, en adelante, Betancourt Colón o apelante, solicitando que dejemos sin efecto la *"Sentencia"* notificada por el Tribunal de Primera Instancia, Sala de San Juan, en adelante, TPI-SJ, el 7 de febrero de 2023. En la misma, el Foro Apelado desestimó la causa de acción incoada por Betancourt Colón.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen apelado.

**I.**

El 6 de mayo de 2021, Betancourt Colón presentó ante el TPI-SJ una *"Petición de Orden de Interdicto Permanente"*.[3] En su petitorio, el apelante alegó que dos días previos a la radicación del

---

[1] Véase Orden Administrativa OATA-2023-131 del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la Jueza Karilyn M. Díaz Rivera.
[2] Véase Orden Administrativa OAT-2024-070 del 26 de junio de 2024, donde se designa a la Juez Maritere Brignoni Mártir en sustitución del Juez Eric. R. Ronda del Toro.
[3] Apéndice del recurso, pág. 1.

Número Identificador
SEN2024_____

recurso, el 4 de mayo de 2021, visitó el Supermercado Caslop, operando como el negocio Supermercado Mi Gente Umbo, en adelante, Supermercado Umbo o apelada.[4] Betancourt Colón solicitó del Foro Apelado un interdicto permanente, daños nominales y compensatorios, para remediar el discrimen sufrido en las instalaciones de la apelada el día de su visita.[5]

Alega el apelante que el establecimiento en cuestión viola el Título VII de la ley federal conocida como el *American with Disabilites Act*, 42 USC sec. 12181 et seq., en adelante, ADA, y las Guías de Diseño Accesible promulgadas por el Departamento de Justicia Federal.[6] En síntesis, le expuso al TPI-SJ que tenía la intención de regresar a Supermercado Umbo, pero el mismo tenía barreras arquitectónicas, que representan un peligro para personas discapacitadas como él.[7]

Según Betancourt Colón, su discapacidad física consiste de condiciones como hidrocefalia, obesidad, insuficiencia cardiaca y anormalidad en los pies.[8] Además, indicó que cuenta con un rótulo para personas con impedimentos, del Departamento de Transportación y Obras Públicas del Gobierno de Puerto Rico.[9] En su recurso ante el TPI-SJ, el apelante denunció barreras en el baño del Supermercado Umbo y el acceso a este; el libre movimiento entre pasillos y góndolas de Supermercado Umbo; el acceso y mantenimiento de los estacionamientos para personas con impedimentos y la ruta de acceso al establecimiento.[10]

El 12 de julio de 2021, Supermercado Umbo radicó su *"Contestación a 'Petición de Orden de Interdicto Permanente'"*.[11]

---

[4] Apéndice del recurso, pág. 5.
[5] *Id.* pág. 1-2.
[6] *Id.* pág. 2.
[7] *Id.* pág.
[8] *Id.* pág. 4.
[9] *Id.* pág. 4.
[10] *Id.* págs. 36-57.
[11] SUMAC, entrada núm. 10.

Arguyó el apelado que Betancourt Colón carecía de legitimación activa, por no haber sufrido un daño real. Además, expuso que remover las barreras arquitectónicas no es fácilmente alcanzable y que el apelante no es una persona discapacitada conforme a la Ley ADA.

Luego de varios trámites procesales, las partes sometieron el informe de conferencia con antelación al juicio el 16 de febrero de 2022.[12] El 24 de febrero de 2022, se celebró la conferencia con antelación al juicio, en la que se discutieron varios asuntos de derecho, referentes a la Ley ADA, a la que está circunscrita la controversia.[13] También, argumentaron sobre las alegadas deficiencias e incumplimientos del Supermercado Umbo.[14] Concluida la discusión, la parte apelante desistió de su reclamación económica; se aprobó el informe de conferencia con antelación al juicio; se señaló la fecha del 19 de octubre de 2022 para el juicio en su fondo y se le concedió a la parte apelada treinta (30) días para presentar su moción para que se dicte sentencia sumaria.[15]

Posteriormente, el 19 de abril de 2022, la apelada radicó una *"Solicitud de Desestimación de Petición"*, la cual fue acogida como solicitud de sentencia sumaria.[16] En su alegación responsiva, Supermercado Umbo arguyó que los reclamos al amparo de la Ley ADA no pueden ser remediados con daños nominales.[17] Además, negó que existan barreras arquitectónicas para el acceso al baño, el estacionamiento y la entrada al local. Con relación a las barreras para el uso del baño, indicó que el lavamanos había sido removido, conforme las sugerencias de Betancourt Colón, y la configuración del baño fue modificado para el fácil acceso de personas

---

[12] SUMAC, entrada núm. 17.
[13] SUMAC, entrada núm. 18.
[14] *Id.*
[15] *Id.*
[16] Apéndice del recurso, pág. 59.
[17] *Id.* pág. 64.

discapacitadas.[18] Finalmente, en su escrito, Supermercado Umbo solicitó al Foro Primario que dictara sentencia sumaria.[19]

Por su parte, Betancourt Colón presentó su *"Oposición a Solicitud de Desestimación de Petición",* el 18 de mayo de 2022.[20] Más adelante, el 11 de octubre de 2022, el apelante solicitó que se dictara sentencia sumaria parcial, a lo cual se opuso la parte apelada el 31 de octubre de 2022.[21]

Finalmente, el 7 de febrero de 2023, el TPI-San Juan emitió una *"Sentencia",* en la cual declaró "Ha Lugar" la desestimación solicitada por Supermercado Umbo, y "No Ha Lugar" la solicitud de sentencia sumaria parcial de Betancourt Colón.[22] En su dictamen, el Foro Apelado hizo las siguientes determinaciones de hechos, sobre los que *no existe controversia*:

1.    Betancourt Colón tiene una discapacidad según está definida por la    Ley ADA. (42 USC sec. 12102(a)(A)).

2.    Supermercado CASLOP, Inc. es una corporación debidamente creada   y existente al amparo de la Ley General de Corporaciones de Puerto Rico, dedicada a operar un supermercado.

3.    Supermercado opera en una estructura arrendada ubicada en la Urb. Las Lomas, Ave. San Patricio, #829, San Juan, Puerto Rico, 00920.

4.    Supermercado es un lugar de acomodo público según está definido por la Ley ADA. (42 USC sec. 12181(7)(E)).

5.    Supermercado abrió al público en diciembre de 1987, operando en el establecimiento ubicado en Urb. Las Lomas, Ave. San Patricio, #829, San Juan, Puerto Rico, 00920.

6.    El 4 de mayo de 2021, Betancourt Colón visitó el establecimiento donde opera Supermercado y encontró varias barreras que interfirieron con su capacidad de usar y disfrutar de los bienes, servicios, privilegios y acomodos ofrecidos por Supermercado.

7.    En junio de 2021, Supermercado llevó a cabo ciertos cambios en el establecimiento, incluidos la remoción del

---

[18] Apéndice del recurso, pág. 65.
[19] *Id*. pág. 66.
[20] *Id*. pág. 80.
[21] *Id*. págs. 94-143.
[22] *Id*. pág. 161.

lavamanos del interior del baño del establecimiento y su colocación en el exterior del baño.

En síntesis, concluyó que el Supermercado Umbo solo estaba obligado a corregir las barreras arquitectónicas solo si son fácilmente alcanzables, ya que el mismo *comenzó a operar previo al 1993*.[23] Aun así, determinó que el apelado evidenció la corrección a las barreras identificadas en el baño.[24] Además, tomó en su dictamen conocimiento judicial sobre el hecho de que existen aproximadamente ochenta (80) demandas similares, presentadas por Betancourt Colón.[25]

Así las cosas, el 9 de marzo de 2023, Betancourt Colón recurrió ante nos mediante un recurso apelativo, impugnando la *"Sentencia"* que nos ocupa, la cual fue notificada el 7 de febrero de 2023. Mediante *"Resolución"* del 16 de marzo de 2023, concedimos un término de veinte (20) días a la parte apelada, para que presentara su oposición al recurso.

El 5 de abril de 2023, Supermercado Umbo presentó una *"Solicitud de Desestimación de Apelación"*, la cual fue declarada "No Ha Lugar" por este Foro. Finalmente, el 25 de abril de 2023, la parte apelada presentó su *"Moción en Cumplimiento de Orden y para Mostrar Causa"*, perfeccionando así el recurso.

## II.

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados.

---

[23] Apéndice del recurso, pág. 171.
[24] *Id.*
[25] *Id.* pág. 173.

Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones *viene obligado* a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

**B. Ley ADA del año 1990**

El American with Disabilities Act, ADA por sus siglas en inglés, es una legislación enfocada en derechos civiles, que prohíbe la discriminación contra las personas con discapacidades en varias áreas. A tales efectos, el Título III de dicha legislación aborda lo relativo a entidades privadas que se consideran instalaciones públicas. Dentro de la categoría de instalaciones públicas se incluyen los supermercados.

A la luz de lo anterior, el propósito de la Ley ADA es garantizar que las personas con discapacidad tengan los mismos derechos y oportunidades que todas las demás personas. Así, pues, este título ordena a las instalaciones públicas que realicen "modificaciones razonables" en sus formas habituales de hacer las cosas cuando atienden a personas con discapacidades. Por lo tanto, no se puede infringir el disfrute pleno e igualitario de los bienes, instalaciones y servicios de ninguna persona a causa de su discapacidad. En suma, la ADA prohíbe la discriminación por razón de discapacidad. Ley ADA sec. 12101.

*Entre las prácticas de discrimen prohibidas está el no remover barreras arquitectónicas cuando su remoción es fácilmente alcanzable.* Ley ADA sec. 12182 (b)(2)(A)(iv). Sin embargo, aun cuando pueda demostrarse que la remoción de las barreras no es fácilmente alcanzable, deberán hacerse accesible, mediante métodos alternos, los bienes, servicios, facilidades, privilegios, ventajas, o acomodos brindados. Ley ADA sec. 12182 (b)(2)(A)(v). En caso de que el discrimen persista, por no haberse removido la barrera o provisto un método alterno para ello, el discapacitado podrá solicitar un interdicto solicitando una orden para que se alteren las facilidades. Ley ADA sec. 12188.

Ahora bien, para que un tribunal determine si el demandante, en efecto, posee un derecho para solicitar el *injunction*, debe evaluar **la existencia de una amenaza real e inminente de una barrera arquitectónica que puede causar un daño futuro.** *Santiago Ortiz v. Caparra Ctr. Assocs., LLC*, 261 F. Supp. 3d 240, 248 (2016), citando a *Dudley v. Hannaford Bros.*, 333 F.3d at 305-06 (1er Cir. 2003).

Es posible que una persona discapacitada visite lugares de alojamiento público con el fin de identificar y remediar violaciones a la Ley ADA.  A estas personas se les ha denominado como *testers*. Aunque el hecho de ser un *tester* no es un impedimento para que el demandante presente su causa de acción, éste deberá satisfacer los requisitos de legitimación activa.  *Laufer v. Mann Hospitality, L.L.C.*, 996 F.3d 269, 63 NDLR P 63.

La Ley en cuestión reconoce tres (3) categorías, sobre las cuales recaen diversas responsabilidades al amparo de su Título III. La primera de estas, son las nuevas estructuras, consideradas como tal si sin lugares de acomodo público construidos después del 26 de enero de 1993. Ley ADA, sec. 12183. La legislación precitada requiere que estas estructuras sean fácilmente accesibles por personas con discapacidades. Sin embargo, esta normativa encuentra excepción cuando la entidad demuestre que cumplir con este requisito es estructuralmente impracticable. Ley ADA, sec. 12183(a)(1).

La segunda categoría responde a las alteraciones realizadas posteriores al 26 de enero de 1993, a las estructuras de acomodo público. Así como los requisitos para las estructuras nuevas, una vez se realizan alteraciones a un lugar de estos, los mismos deben cumplir con el requisito de ser fácilmente accesibles, independientemente de la fecha en la que la estructura fue levantada. Ley ADA, sec. 12183(a)(2).

Finalmente, se encuentra la categoría de estructuras existentes. Según la ADA, supra, estas no tienen que cumplir con los estándares de construcciones nuevas o alteraciones. A esos efectos, las estructuras existentes solo deberán remover sus barreras arquitectónicas cuando hacerlo sea fácilmente alcanzable. Ley ADA, supra, sec. 12181(9). La referida sección dispone que para determinar si la remoción de estas barreras es fácilmente alcanzable, se deberá evaluar el costo de este, los recursos financieros de quien debe llevarlos a cabo, el impacto que esta acción pueda tener sobre el funcionamiento del establecimiento, entre otros.

Es importante destacar que, sobre el demandante, recae el peso probatorio de evidenciar que un lugar discrimina al amparo de la Ley ADA, supra, al tener una barrera arquitectónica, y que remover la misma es fácilmente alcanzable. A tales fines, para establecer un caso *prima facie* de discrimen bajo el Título III de la Ley ADA, un demandante debe establecer que: (1) es un individuo cualificado con una discapacidad bajo la Ley ADA; (2) el demandado opera un lugar de acomodo público, y (3) fue discriminado por su discapacidad. *Medina–Rodríguez v. Fernández Bakery, Inc.,* 255 F.Supp.3d 334, 341 (2017).

### a. Guías de Diseño Accesible

La Guía de Diseño Accesible – en inglés, *Standards for Accesible Design* – de 1991, es una especie de manual emitido por el Departamento de Justicia federal, para delimitar los contornos de diseño, construcción y alteración de edificios, para que cumplan con los requisitos de la ADA, supra. 28 CFR sec. Pt. 36, App. D.

La guía promulgada en el año 1991 rige las estructuras levantadas posteriores al 1993, o las que fueron construidas previo al año 1993 pero alteradas posteriormente a este año. Con relación

a la controversia que nos ocupa, precisa apuntalas que este manual *nada dispuso sobre las estructuras existentes, previo al año 1993.*

### C. Conocimiento Judicial

El acto de tomar conocimiento judicial, en nuestra jurisdicción, es un método de recibir prueba, con el fin de establecer un hecho, sin la necesidad de presentar evidencia para ello. *U.P.R. v. Laborde Torres*, 180 DPR 253, 277 (2010); E.L. Chiesa, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y federales*, [ed. de autor], 1998, T. II, Sec. 13.1, pág. 1129.

El apoyo más elemental de esta práctica judicial surge de la Regla 103 de las Reglas de Evidencia de Puerto Rico, en adelante, Reglas de Evidencia, 32 LPRA Ap VI, R. 103. La misma dispone que las reglas de conocimiento judicial aplican *en todas las etapas de los procedimientos.* Dicho esto, los preceptos que regulan esta facultad se encuentran en la Regla 201 de las Reglas de Evidencia, supra. Esta Regla proviene de la Regla 11 de las Reglas de Evidencia de 1979, *ahora derogadas*, y de la Regla 201 de Evidencia federal.

La precitada regla 201, en lo pertinente al caso de marras, reza de la siguiente manera:

(a) Esta regla aplica solamente al conocimiento judicial de hechos adjudicativos

(b) El tribunal podrá tomar conocimiento judicial solamente de aquel hecho adjudicativo que no esté sujeto a controversia razonable porque:

(1) Es de **conocimiento general dentro de la jurisdicción territorial del tribunal**, o

(2) es **susceptible de corroboración inmediata y exacta** mediante fuentes cuya exactitud no puede ser razonablemente cuestionada.

(c) El **tribunal podrá tomar conocimiento judicial a iniciativa propia** o a solicitud de parte. Si es a solicitud de parte y ésta provee información suficiente para ello, el tribunal tomará conocimiento judicial.

(d) Las partes tendrán derecho a ser oídas en torno a si procede tomar conocimiento judicial. De no haber sido notificada oportunamente por el tribunal o por la parte promovente, la parte afectada podrá solicitar la oportunidad de ser oída luego de que se haya tomado conocimiento judicial.

(e) El tribunal podrá tomar conocimiento judicial en cualquier etapa de los procedimientos, ***incluyendo la apelativa***.

[…]

(Énfasis nuestro).

La jurisprudencia que ha interpretado y ampliado el acto de tomar conocimiento judicial es amplia. *Senado de PR v. ELA*, 203 DPR 62, 67 (2019); *UPR v. Laborde Torres*, 180 DPR 253 (2010); *Pérez v. Mun. de Lares*, 155 DPR 697, 704 (2001); *Asoc. De Periodistas v. González,* 127 DPR 704, 713 (1991); *Lluberas v. Mercado e Hijos,* 75 DPR 7 (1953). Con relación a este acto, al amparo de la regla en cuestión, la misma se refiere al conocimiento judicial de hechos adjudicativos, no legislativos. Regla 201(A) de las Reglas de Evidencia, supra. Bien explica el Profesor Chiesa la diferencia entre ambos, cuando nos comenta que: [e]sos hechos legislativos ("policy facts") son discutidos por las partes en sus alegatos. Los hechos adjudicativos son los vinculados con las alegaciones […]". E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, 1era ed., Ediciones SITUM, 2016, pág. 55. Por lo tanto, los hechos adjudicativos son "los hechos que están en controversia de acuerdo con las alegaciones de las partes y del derecho sustantivo que rige el asunto." *Pérez v. Mun. de Lares*, supra, pág. 704. Ello, porque el tribunal presume que la cuestión es tan notoria que no será disputada.

Lo cierto es que "a mayor generalidad el hecho, mayor probabilidad de que se puede tomar conocimiento judicial; a mayor especificidad más difícil es tomar conocimiento judicial". E.L.

Chiesa, *Reglas de Evidencia de Puerto Rico 2009, Análisis por el Prof. Ernesto Chiesa,* San Juan, Publicaciones J.T.S., 2009, pág. 104. El promovente tiene el peso de persuadir al tribunal sobre la indisputabilidad de los hechos adjudicativos sobre los que se pretende tomar conocimiento judicial. *Pérez v. Mun. de Lares*, supra, pág. 705.

El inciso (B) de la Regla 201 de Evidencia, supra, distingue entre el conocimiento judicial de carácter permisible y el conocimiento judicial de carácter mandatorio. Satisfecho el requisito del inciso (A), los tribunales pueden tomar conocimiento judicial independientemente de si las partes lo solicitan. E.L. Chiesa, *Reglas de Evidencia de Puerto Rico 2009, Análisis por el Prof. Ernesto Chiesa,* supra, pág. 713.

Nuestro Máximo Foro ha resuelto que los tribunales pueden tomar conocimiento judicial de los procedimientos celebrados, sentencias o resoluciones dictadas en otros pleitos, pues son hechos cuya comprobación puede ser exacta o inmediata. *Guadalupe v. Saldaña*, 133 DPR 51, 52 (1993); *Asociación de Periodistas v. González,* 127 DPR 704, 714-715 (1991). Ahora bien, tomar conocimiento judicial de los procedimientos celebrados, sentencias o resoluciones dictadas en otros pleitos, no implica que, al así hacerlo, los tribunales estén obligados a admitir el contenido de dichos procedimientos, sentencias o resoluciones si entienden que debe ser excluido a la luz de alguna norma de exclusión de evidencia. De proceder tomar conocimiento judicial, aunque ello exime a la parte de presentar evidencia de la veracidad del hecho de tal forma establecido, la otra parte puede ofrecer prueba en contrario, así como objetar su admisibilidad basado en alguna otra norma de exclusión. *Lluberas v. Mercado e Hijos,* supra. "El conocimiento judicial no tiene el efecto de hacer admisible lo que es objeto de una regla de exclusión". *UPR v. Laborde Torres,* supra, pág.

278, citando a E.L. Chiesa, *Reglas de Evidencia de Puerto Rico 2009,* supra, pág. 104.

Por otro lado, la parte afectada puede impugnar la toma de conocimiento judicial, pues así lo establece la misma regla. Regla 201(D) de las Reglas de Evidencia, supra. Si bien es cierto esto, en su discusión de la Regla 103 de las Reglas de Evidencia, supra, el Profesor Chiesa expone que "[e]n cuanto al conocimiento judicial, es obvio que si está presente uno de los dos fundamentos para tomar tal conocimiento [...] no hay razón para no dar por probado el hecho correspondiente en cualquier tipo o etapa del procedimiento". E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, supra, pág. 19.

### III.

El apelante nos hace *cinco (5) señalamientos de error.* Los primeros cuatro de estos, por estar estrechamente relacionados, los discutiremos en conjunto. En síntesis, plantea Betancourt Colón que el TPI-SJ se equivocó al desestimar su causa de acción contra Supermercado Umbo, por no haber interpretado correctamente la normativa de la Ley ADA y las Guías de Diseño accesible. *No le asiste razón.*

El Supermercado Umbo *está operando desde el 1987.* Como vimos, bajo la Ley ADA, la propiedad de la apelada recae en la categoría de estructuras existentes. Como reseñáramos en el apartado anterior, los establecimientos levantados previo al 1993, no están obligados a cumplir con el requerimiento de que los mismos sean accesibles y utilizables por personas con discapacidades, ni a cumplir con los estándares de las Guías de Diseño de 2010. No obstante, reconocemos que estos tienen, a su vez, el deber de remover, como en el caso específico ante nos, las barreras arquitectónicas que dificulten o impidan el acceso a discapacitados bajo la Ley ADA, ***cuando estos sean fácilmente alcanzables.*** Si

no son fácilmente alcanzable estos fines, el lugar deberá auscultar posibles métodos alternos que faciliten el acceso.

Con la clara intención de atender las barreras arquitectónicas en el baño de su establecimiento, el apelado presentó evidencia de las correcciones hechas en el mismo, ante el TPI-SJ. No obstante, con relación a las demás barreras señaladas por el apelante en el área del estacionamiento y la entrada, Supermercado Umbo las refutó. En su *"Sentencia"*, el Foro Primario reconoce que el apelante, en cumplimiento con el peso probatorio que le corresponde, ofreció métodos alternos para atender los mismos. Sin embargo, así como nos reseña en su dictamen el Foro Apelado y de los documentos que cargan el expediente, surge que la pintura y el letrero de los estacionamientos separa un par de estos para las personas con discapacidad. Por otro lado, se comprueba mediante la documentación que obra en autos que el local en cuestión sí cuenta con acceso, vía rampa, para personas con discapacidad.

Las imputaciones que hace el apelante, con relación a las deficiencias con el resultado de los cambios, y las dimensiones de los estacionamientos, no nos convencen. Nuestra investigación fue auxiliada forzosamente por el Sistema Unificado de Manejo y Administración de Casos (SUMAC), dada la insuficiencia del expediente y los documentos provistos por el promovente de este recurso. Y en la misma, se desprende que el apelado fue diligente en atender las deficiencias levantadas por el apelante, a la luz de la Ley ADA. Resulta forzoso concluir que Supermercado Umbo, abarcó la solicitud de *injunction* presentada por Betancourt Colón con seriedad, pues en un periodo significativamente corto, atendió las barreras arquitectónicas que impedían el uso y acceso al baño de su establecimiento, por personas con discapacidad, al amparo de la Ley ADA.

Finalmente, en *su último señalamiento de error,* el apelante aduce que el Foro Primario se equivocó al tomar conocimiento judicial de las decenas de casos que Betancourt Colón ha promovido, muy similares en su naturaleza. *No le asiste razón.*

Es harto conocido, y ha sido incesantemente discutido por nuestra jurisprudencia, que la práctica de tomar conocimiento judicial de hechos adjudicativos no solo está permitida, sino que tiene el encomiable propósito de fomentar la economía procesal. En el caso ante nuestra consideración, el Foro Apelado tomó conocimiento judicial del hecho de que el promovente, aquí apelante, había incoado múltiples acciones por daños y discrimen, amparado, incluso, en la Ley ADA. Nos resta, entonces, evaluar si el TPI-SJ abusó de su discreción al tomar conocimiento judicial de esto, y no se ajustó a los linderos que le permiten así hacerlo.

La Regla 201 de las Reglas de Evidencia, supra, la cual regula esta facultad, dispone que el Tribunal, como en el caso de epígrafe, puede tomar conocimiento judicial a instancia propia. Además, dispone que así puede hacerlo en cualquier etapa de los procedimientos judiciales, *incluyendo la etapa apelativa.* Aunque regularmente se hace en la etapa de juicio, lo cierto es que el Tribunal puede tomar conocimiento judicial, incluso, en etapas previo a la adjudicación de la controversia, o en la adjudicación de esta. Ahora bien, es indispensable que el Foro Apelado haya cumplido con al menos uno de los requisitos de la Regla 201(B) de las Reglas de Evidencia, supra. La regla en cuestión establece que un Tribunal puede tomar conocimiento judicial de un hecho adjudicativo que no pueda ser controvertido de manera ecuánime. Para así hacerlo, debe ser un hecho que sea de conocimiento general, y pueda ser corroborado de manera inmediata, a través de una fuente fidedigna.

El TPI-SJ tomó conocimiento judicial de que el apelante es parte en numerosos casos – según la *"Sentencia"* aproximadamente ochenta (80) – de esta naturaleza, que han sido atendidos y adjudicados en el Foro Primario y ante este Tribunal Apelativo.[26] ***La existencia de estos casos son un hecho de conocimiento general, especialmente para el Poder Judicial de Puerto Rico***, ***cuyo Tribunal General de Justicia asume la jurisdicción para atender.*** Por ello, concluimos que no erró el TPI-SJ al así hacerlo.

Justipreciamos que la similitud de los casos promovidos por el apelante es justificación razonable para que el Foro Primario evalúe la controversia que al momento tenga ante sí. Especialmente si estos hechos, pueden arrojar luz sobre la disposición de controversias similares, dentro del mismo marco jurídico-legal.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *"Sentencia"* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[26] Vease, KLAN202300047 y KLAN202301095.